# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF WISCONSIN

| | |
|---|---|
| YUSEF LATEE WILLIAMS,<br><br>                  Plaintiff,<br>v.<br><br>STEVEN SCHUELER, C.O. II SCHLIEVE,<br>and C.O. III D. MAYS,<br><br>                  Defendants. | Case No. 10-CV-981-JPS<br><br><br><br>ORDER |

       Following a jury trial in the above-captioned case, and pursuant to the jury's special verdict, this court entered a judgment against defendant D. Mays ("Mays"). (Docket #86). Presently before the court is Mays's Renewed Motion for Judgment as a Matter of Law (Docket #87). The motion is fully briefed and ready for adjudication. As explained below, Mays's motion will be denied.

1.     Legal Standard

       Mays's motion proceeds under Federal Rule of Procedure 50(b). Brief in Support at 3. Under Rule 50, a court must determine whether the jury had "a legally sufficient evidentiary basis" for its verdict. *May v. Chrysler Group, LLC*, 716 F.3d 963, 971 (7th Cir. 2012) (*citing* Fed.R.Civ.P. 50(a)(1); *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 149 (2000); *Thomas v. Cook Cnty. Sheriff's Dep't*, 604 F.3d 293, 300–01 (7th Cir. 2009)). The court must construe the facts "strictly in favor of the party that prevailed at trial," which includes drawing reasonable inferences in the prevailing party's favor and disregarding evidence favorable to the moving party that the jury is not required to believe. *Id.* (citations omitted). The court must determine "whether a highly charitable assessment of the evidence supports the jury's

verdict or if, instead, the jury was irrational to reach its conclusion." *Id.* (citations omitted).

2. Facts

The facts relevant to this motion may be briefly stated. Plaintiff Yusef Latee Williams ("Williams") was an inmate at Waupun Correctional Institution in May of 2006 when he was denied six consecutive meals. Williams testified that he was on Medical Observation in 2006 because he refused, for religious reasons, to have a subcutaneous tuberculosis test administered. Tr. 6/17/13 (Docket #90) at 134:1-19. While on Medical Observation, he was put in the Segregation Unit of the prison, beginning on May 16, 2006. Tr. 6/17/13, 135:7-15. Then, for the breakfast meal on May 24, 2006, Williams was not given a meal, even though he asked the correctional officer for a meal tray. Tr. 6/17/13, 136:21-137:4. For lunch on May 24, 2006, Williams received a tray; when he asked the correctional officer for pepper, the officer stated, "Oh, I forgot, you should have never received a tray. Oh, I forgot." Tr. 6/17/13, 137:22-138:9. Then, from the evening meal on May 24, 2006, to the noon meal on May 26, 2006, or six consecutive meals, Williams did not receive any meals, though he asked to be fed. Tr. 6/17/13, 138:19-21. On May 26, 2006, Mays denied Williams his lunch meal. Mays then returned, opened Williams's trap door, and asked for Williams's meal tray; Mays slammed Williams's trap door and Mays and another correctional officer laughed at Williams. Tr. 6/17/13, 139:24-140:6. Williams testified that not being fed made him feel "distraught," and that he suffered headaches, stomach cramps, and paranoia. Tr. 6/17/13, 139:3-9. He further testified that he did not know when he would be fed again. Tr. 6/17/13, 139:10-11. Mays testified that he did not remember the specific incident Williams described. Tr. 6/17/13, 72:23-73:1, 80:24-81:5.

The jury found that two other correctional officer defendants did not violate Williams's constitutional rights. Special Verdict Form (Docket #85) at 1-2. However, the jury found that Mays violated Williams's constitutional rights by refusing to give him a noon meal tray on May 26, 2006. Special Verdict Form at 1. The jury awarded Williams nominal damages of $1.00, and declined to award punitive damages. Special Verdict Form at 3. Judgment was entered for Williams as against Mays. (Docket #86).

In his motion, Mays argues that the jury's verdict is not supported by the evidence for two reasons. Brief in Support (Docket #93) at 5. First, Mays argues that his denial of one meal is insufficient to constitute an Eighth Amendment violation. Brief in Support at 5. Second, Mays argues that the record does not contain medical evidence to support Williams's assertions that he was harmed from missing the meal. Brief in Support at 7. Mays requests that the court enter judgment in his favor, and that it order Williams to pay his costs and attorneys' fees related to this matter. Brief in Support at 8. In response, Williams contends that the evidence was sufficient to support an Eighth Amendment violation, and that Williams's testimony regarding injury was sufficient to support the jury's verdict. Response (Docket #94) at 4, 5.

3. Analysis

    3.1    The Eighth Amendment Violation

Mays first argues that the evidence does not support the jury's verdict because the evidence establishes that Mays only denied Williams one meal, and deprivation of one meal is insufficient to rise to the level of a constitutional violation. Brief in Support at 5. Williams argues that the evidence and reasonable inferences drawn therefrom support a finding that

Mays knew of and participated in a plan to deprive Williams of his meals. Response at 4.

Both parties concur that denying a prisoner one meal does not state an Eighth Amendment claim. The court agrees that, in most situations, denying an inmate a single meal would not rise to the level of a constitutional violation. Denial of an "identifiable human need such as food" constitutes an Eighth Amendment violation. *Reed v. McBride*, 178 F.3d 849, 853-54 (7th Cir. 1999) (*quoting Wilson v. Seiter*, 501 U.S. 294, 304 (1991)). However, as the Seventh Circuit instructed in *Reed*, not all withholding of food constitutes a Constitutional violation; a court must "assess the amount and duration of the deprivation." *Id.* at 853. Deprivation of food violates an inmate's constitutional rights when the correctional institution denies food so frequently that the inmate is not being provided with a "nutritionally adequate" diet. *Antonelli v. Sheahan*, 81 F.3d 1422, 1432 (7th Cir. 1996). Under most circumstances, denial of one meal will not constitute denial of a "nutritionally adequate" diet.

However, if a prisoner is denied several meals in a row, his diet may not be "nutritionally adequate." This conclusion comports with analysis from the Seventh Circuit in *Reed* that, in the instance where a prisoner was "already infirm," deprivation of food is a more serious matter because "an alleged deprivation of food could possibly have more severe repercussions for him than a prisoner in good health." *Reed*, 178 F.3d at 853-54. Simply stated, while denying a prisoner one meal may not necessarily rise to the level of a constitutional violation, denial of a meal with the knowledge that the prisoner has been denied several previous meals does.

Mays argues that there is no evidence showing that he knew Williams had been denied meals. However, there are several facts in the record from

which the jury could infer such knowledge. First, as Mays acknowledges, Williams testified that, after Mays denied Williams a meal, he taunted Williams by asking for Williams's meal tray, and then laughed about it with Correctional Officer Reese. Tr. 6/17/13, 139:24-140:6. A contemporaneously-written administrative complaint, defendants' exhibit 1017, was admitted into evidence; this complaint comports with Williams's testimony.

Additionally, the jury witnessed Mays's testimony. Williams called Mays adversely. Tr. 6/17/13, 69:13. On direct examination from Williams's counsel, when asked about events from May 2006, Mays repeatedly responded "I do not recall." Tr. 6/17/13, 70:2, 70:7, 71:4, 73:1. Then, on cross-examination by his counsel, Mays testified as follows:

> Q. During May of 2006 did any supervisor tell you that Mr. Williams had made complaints about not being fed?
> A. No.
> ...
> Q. And did Mr. Williams ever hand you a sheet of paper during May of 2006 and say "hey, I'm not getting fed"?
> A. No.
> Q. Did any of your supervisors say "hey, check on Mr. Williams, he's not eating his meals"?
> A. No.
> ...
> Q. Do you know how many times during May you may have passed Mr. Williams' cell?
> A. At least once a day.
> Q. And approximately how many days did you work during May of 2006 in segregation?
> A. Probably 22 to 24 days.
> Q. Any of those times did Mr. Williams complain to you that he had not been fed?
> A. No.

Tr. 6/17/13, 81:12-14, 81:19-24, 82:4-12. Immediately thereafter, on redirect examination by Williams's counsel, Mays testified as follows:

> Q. You answered [your counsel's] questions to the effect that Mr. Williams never complained about not receiving meals in May of 2006; is that right?
> A. Correct.
> Q. Well, I thought in direct examination you said you couldn't remember what happened in May of 2006.
> A. I can't recall. I don't recall Mr. Williams ever telling me he didn't receive meals.
> Q. But it's possible you forgot that just like you forgot about not giving him a meal for lunch on May 26.

Tr. 6/17/13, 83:13-22.

With this testimony and evidence on the record, and drawing reasonable inferences therefrom, the court cannot conclude that the jury was irrational in finding that Mays violated Williams's constitutional rights. First, the jury could have believed Williams's testimony that Mays taunted Williams about withholding meals and laughed about it with another officer. From this evidence, the jury could have reasonably inferred that Mays and the other officers were purposefully denying Williams food. Then, Mays was impeached on redirect examination, and he retreated from the denials he had offered to his counsel on cross-examination. Having witnessed this, the jury could have rejected Mays's testimony that Williams did not tell him about the skipped meals. Taken together, the evidence lends itself to a reasonable inference that Mays knew Williams was not being fed, but that Mays persisted in denying Williams food despite this knowledge.

The court's responsibility in considering a motion under Rule 50 requires the court to construe the evidence "strictly in favor of the party that prevailed at trial," in this case, Williams. *May v. Chrysler Group, LLC,* 716 F.3d at 971. In this instance, a "highly charitable assessment of the evidence" supports the jury's verdict against Mays. Because the court concludes that

the jury was not irrational in finding that Mays violated Williams's constitutional rights, the court will not grant Mays's motion on this point.

### 3.2 Williams's Injury

Mays next contends that the jury's verdict is not supported by evidence because there is no evidence to support the finding that Williams was harmed by Mays's actions. Brief in Support at 7. Mays specifically cites the lack of a written record of Williams's injury. Williams points to his testimony, in which he describes the pain and suffering he experienced as a result of not being fed. Response at 5.

The court is required to view the facts in favor of Williams and draw reasonable inferences in his favor; further, the court must disregard evidence favorable to Mays that the jury was not required to believe. *May v. Chrysler Group, LLC,* 716 F.3d at 971. Thus, Mays's protestations that the record contained neither complaints made to medical staff, nor a written Health Service Request, are irrelevant to the resolution of the motion. As Williams points out, the record contained testimony from Williams that he was "distraught," and that he suffered headaches, stomach cramps, and paranoia. Tr. 6/17/13, 139:3-9. He further testified that he did not know when he would be fed again. Tr. 6/17/13, 139:10-11. Williams further testified that when he saw the nurse, he reported having headaches, but the nurse did not document what he was saying. Tr. 6/17/13, 141:16-20.

The jury may well have found that Williams did, in fact, suffer harm as he testified. This testimony is sufficient to constitute injury in the context of an Eighth Amendment claim. *Delaney v. DeTella,* 256 F.3d 679, 685 (7th Cir. 2001) (finding plaintiff's claims of "both physical and mental injuries including migraines, heartburn, stomach cramps, neck pains, constipation, lethargy, and depression" to state an Eighth Amendment claim). Further, in

Page 7 of 8

Case 2:10-cv-00981-JPS    Filed 11/26/13    Page 7 of 8    Document 96

this case the jury awarded nominal damages of $1.00; because a plaintiff may be awarded nominal damages without a showing of any physical injury, Williams' testimony regarding his emotional distress is adequate to support the verdict in this case. *Washington v. Hively*, 695 F.3d 641, 644 (7th Cir. 2012) (pretrial detainee plaintiff may proceed in a Section 1983 Eighth Amendment case seeking nominal and punitive damages even without alleging any physical injury). *See also Thomas v. Ill.*, 697 F.3d 612, 614 (7th Cir. 2012) (explaining that it "is not a new principle" that the absence of physical injury does not entitle correctional officer defendants to judgment as a matter of law).

Accordingly, a reasonable jury could have found that the denial of food injured Williams, the lack of written documentation of his injuries notwithstanding. The court will not grant Mays's motion on this point.

For the above-articulated reasons, Mays has not shown entitlement to judgment as a matter of law, and thus the court is obliged to deny his motion.

Accordingly,

IT IS ORDERED that Mays's Renewed Motion for Judgment as a Matter of Law (Docket #87) be and the same is hereby DENIED.

Dated at Milwaukee, Wisconsin, this 26th day of November, 2013.

BY THE COURT:

J.P. Stadtmueller
U.S. District Judge